518 So.2d 768 (1986)
Ex parte Henry F. HAYS.
Ex parte State of Alabama.
(Re Henry F. HAYS v. STATE of Alabama). (Two Cases)
85-143, 85-144.
Supreme Court of Alabama.
August 26, 1986.
Rehearing Denied, Rehearing Granted September 25, 1987.
Certiorari Granted February 29, 1988.
*770 M.A. Marsal, Mobile, for petitioner/cross-respondent.
Charles A. Graddick, Atty. Gen. and Joseph G.L. Marston III, Asst. Atty. Gen., for respondent/cross-petitioner.
Rehearing Denied in 85-143, Rehearing Granted in 85-144 September 25, 1987.
Certiorari Granted February 29, 1988. See 108 S.Ct. 1099.
PER CURIAM.
This Court granted petitions for writ of certiorari filed by the state and the defendant and has consolidated them for the purposes of review.
Cross-petitioner Henry F. Hays was indicted by a Mobile County grand jury on June 22, 1983, for violation of Code 1975, § 13A-5-40(a)(1), as a result of Hays's alleged abduction and murder of Michael Donald. Trial was scheduled for December 5, 1983. On December 2, 1983, the state prosecutor requested and was granted a one-day continuance of the trial on the stated grounds that the state required additional time to obtain physical evidence for the trial that was still being tested by an out-of-state laboratory. Defense counsel consented to the continuance.
On December 5, 1983, the state prosecutor convened a grand jury, which returned a new indictment against Hays, charging him with robbery-murder under code 1975, § 13A-5-31(a)(2). The new indictment was precipitated by the state prosecutor's realization upon receiving the case on December 2 that the original indictment was flawed because the provision of Code 1975, § 13A-5-40(a)(1), under which Hays had originally been indicted, was not yet effective on the date the alleged criminal act occurred.
Hays's arraignment under the new indictment was held late in the afternoon on December 5, 1983. Under protest, Hays entered a plea of not guilty. Defense counsel vigorously objected to proceeding with the trial under the new indictment, which was scheduled for the following morning.
The following morning, defense counsel moved for a continuance in order to prepare his defense in light of the new indictment. After lengthy argument on the motion, much of which is reproduced in the opinion of the Court of Criminal Appeals, the trial judge denied the motion and the case was tried.
Although the facts in this case were adequately set out in the Court of Criminal Appeals' opinion, 518 So.2d 379, the following facts are highlighted for purposes *771 of this review. On March 21, 1981, Hays and James Knowles drove through the streets of Mobile, Alabama, seeking out a black man to kill. The victim, Michael Donald, was abducted by the two men as he walked along a city street. As the three men rode in the automobile, Knowles forced Donald at gunpoint to empty his pockets. Donald placed his wallet and other contents of his pockets on the floor of the automobile. Donald was driven to a secluded area, where he was choked with a rope and beaten until he became unconscious. Hays then cut Donald's throat with a knife. Donald's body was taken back to Mobile, where Hays and Knowles hung the body from a tree with a rope.
The jury convicted Hays under the new indictment, finding him guilty of robbery-murder. After the trial judge charged the jury at the sentencing phase of the trial, the jury recommended that Hays be sentenced to life imprisonment without parole. On February 2, 1984, the trial judge held a subsequent sentencing hearing after having received a pre-sentence report, at which time he overrode the jury's recommendation and sentenced Hays to death.
Hays's new trial motion was overruled by the trial judge and the case was automatically appealed to the Court of Criminal Appeals.
The Court of Criminal Appeals, with two judges dissenting in part, affirmed Hays's conviction, but set aside the trial judge's death sentence and remanded the case with directions to sentence in accordance with the jury's recommendation of life without parole. The Court of Criminal Appeals subsequently extended its opinion on application for rehearing.
Both Hays and the state filed in this Court petitions for writ of certiorari to review the decision of the Court of Criminal Appeals. We granted the petitions to decide the following issues:
1. Was Hays denied his constitutional right to effective assistance of counsel by being put to trial under a new indictment that was handed down less than 24 hours prior to trial, even though he cannot demonstrate actual prejudice in the defense of the charge?
2. Under Alabama's old death penalty statute, Code 1975, § 13-11-1 through § 13-11-8, as interpreted by our decision in Beck v. State, 396 So.2d 645 (Ala. 1980), may the trial judge sentence a defendant convicted of a capital offense to death when the jury recommends that the defendant be sentenced to life without parole?
3. Did the trial judge err by instructing the jury that its sentence determination was a recommendation to the court?

I.
Hays contends that the trial court's denial of his motion for continuance, under the facts of this case, denied him his constitutional right to effective assistance of counsel under the Sixth Amendment of the United States Constitution. The Court of Criminal Appeals rejected this argument because Hays failed to show any actual prejudice in the defense of his case as a result of the trial court's denial of his motion. We agree.
The United States Supreme Court in Morris v. Slappy, 461 U.S. 1, 11-12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610, 619 (1983), recognized that:
Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. See Chambers v. Maroney, 399 U.S. 42, 53-54, 90 S.Ct. 1975, 1982-1983, 26 L.Ed.2d 419 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. Ungar v. Sarafite, *772 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).
See also, Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); Conner v. State, 447 So.2d 860 (Ala.Cr.App.1984). Furthermore, it is evident from recent Supreme Court precedent that, although certain criteria such as the time provided for the investigation and preparation of the case, counsel's experience, the gravity of the charge and complexity of defenses, and counsel's accessibility to witnesses are relevant factors to consider when evaluating effectiveness of counsel, the controlling analysis is whether the action prejudiced the accused in the defense of his or her case. See United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The accused has the burden of proving prejudice by making a showing that he or she did not receive "a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). As opined in United States v. Cronic, supra:
The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conductedeven if defense counsel may have made demonstrable errorsthe kind of testing envisioned by the Sixth Amendment has occurred.
466 U.S. at 656, 104 S.Ct. at 2045, 80 L.Ed. 2d at 666.
Applying this analysis to the case sub judice, we are of the opinion that Hays has not met his burden of showing actual prejudice in the defense of the charge for which he was convicted. The trial court specifically requested that Hays's counsel explain how he would be prejudiced by the trial court's denial of his motion for continuance and counsel was unable to provide any specific example. Moreover, this Court, during oral argument, which occurred some two years after the trial, asked Hays's counsel how the defendant had been prejudiced by the trial court's action, and counsel was unable to articulate any specific example of prejudice.
After having carefully examined the facts before us that illuminate the events occurring both before and during the trial of this case, we find it improbable that the additional time for preparation requested by Hays would have changed the result of the trial. Defense counsel is a highly competent and well respected member of the criminal bar, having tried many difficult and complex cases throughout his lengthy career. Defense counsel had five months in which to prepare Hays's case for trial under the original indictment. He was aware that the original indictment was defective and that it would not support a capital offense. All incidents alleged in both indictments arose from the same occurrence and the witnesses were identical. Defense counsel had knowledge of the witnesses' identity well in advance of trial. Although defense counsel was unable to interview the witnesses in light of the new indictment prior to trial, he conducted a thorough cross-examination of each witness at the trial. The state's primary witness at trial was Hays's accomplice, James Knowles. Under either indictment, it was Knowles's testimony that was most crucial in proving facts essential to the state's case, and defense counsel conducted an extensive, probing cross-examination of this witness at trial. In summary, although there were variances in the allegations between the two indictments, they were not so different as to significantly alter the posture of the case or the proof required to establish the elements of the crime charged. More importantly, there is no indication that defense counsel was unable to adequately rebut the elements in the new indictment during the trial and that such inability resulted in prejudice to his client.
Hays argues that a presumption of prejudice should be applied without inquiry into the actual conduct of the trial because no fully competent lawyer could have provided effective assistance under the circumstances in the instant case. The Supreme Court in United States v. Cronic, supra, *773 recognized that under certain circumstances there could arise a case in which "the likelihood ... [that] ... any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." 466 U.S. at 659-60, 104 S.Ct. at 2047, 80 L.Ed. at 668. See, e.g., Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). However, we are not convinced that such circumstances were present in the case at bar. The United States Supreme Court has been reluctant to recognize a presumption of prejudice in appointment cases where counsel was not appointed until shortly before trial. See Morris v. Slappy, supra; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, reh. den., 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970); Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). The facts in the case at bar are less compelling, inasmuch as defense counsel was not appointed and was given five months to prepare his case under the first indictment. Moreover, in United States v. Cronic, supra, the Supreme Court rejected the idea that a presumption of prejudice would necessarily arise when counsel is subject to "external constraints" on his performance such as the time allowed to prepare for trial. The Supreme Court opined:
The fact that the accused can attribute a deficiency in his representation to a source external to trial counsel does not make it any more or less likely that he received the type of trial envisioned by the Sixth Amendment, nor does it justify reversal of his conviction absent an actual effect on the trial process or the likelihood of such an effect.
466 U.S. at 662 n. 31, 104 S.Ct. at 2048 n. 31, 80 L.Ed.2d at 670 n. 31.
Prosecutorial misconduct is another external constraint on the performance of defense counsel. Although we share the view expressed in the Court of Criminal Appeals' majority opinion that the possibility of the prosecution's less than candid pronouncement of the reasons for its motion for continuance is despicable, such conduct in the context presented here should be judged by its effect on the fairness of the trial and not in terms of moral culpability. Cf. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
After having carefully reviewed the information available to us on appeal, we hold that the trial court's denial of Hays's motion for continuance did not prejudice the trial process so as to deprive Hays of a fair trial as envisioned by the Sixth Amendment.

II.
The Court of Criminal Appeals affirmed Hays's conviction, but set aside the death penalty sentence imposed by the trial court and remanded the case with instructions that the trial court enter a sentence of life without parole, as recommended by the jury. The state argues that the Court of Criminal Appeals erroneously concluded that the trial court was without authority to disregard the jury's sentence recommendation of life without parole and to impose the death penalty. In its extended opinion on rehearing, the Court of Criminal Appeals opined:
The jury herein did not return a sentence of death. It is clear and not disputed, that if they had done so, the trial judge would not have been bound by their determination of sentence. §§ 13A-5-32 and 13A-5-33, Code of Alabama 1975. However, when the jury returned a sentence of life imprisonment without parole, the trial judge was bound by their determination.
"The court shall instruct the jury that in determining whether to fix a punishment of death, the jury must weigh the aggravating and mitigating circumstances in determining whether to fix the punishment at death....
"If the jury cannot agree on a sentence of death, the defendant shall be sentenced to life imprisonment without parole. If the jury fixes the punishment at death, the court shall hold a *774 hearing as mandated by § 13-11-3 and § 13-11-4."
Beck v. State, 396 So.2d 645, 663 (Ala. 1980) [emphasis added by Court of Criminal Appeals]. Therefore, under the procedure established in Beck, after having determined guilt, the jury then chooses between sentences for death or life without parole, and if they choose the latter, the defendant shall be so sentenced. Only if they choose death is the trial judge authorized to hold another hearing, after which he has the discretion to reduce the sentence or to order the death penalty. See also J. Colquitt, The Death Penalty Laws of Alabama, 33 Ala.L. Rev. 213, 324 (1982): "[T]he Beck procedure authorizes the jury to fix punishment at death in its verdict, but requires a sentence of life imprisonment without parole if the jury is unable to agree to impose the death penalty. The trial judge can impose a sentence of life imprisonment without parole even if the jury recommends death, but the judge cannot impose a death sentence under the 1975 act in the absence of a jury verdict imposing that sentence."
We are of the opinion that the Court of Criminal Appeals erred in reaching the above conclusion.
In Jacobs v. State, 361 So.2d 640, 646 (Ala.1978), Chief Justice Torbert stated the following about the old Alabama Death Penalty Statute, Code 1975, § 13-11-1 through 13-11-8, which is applicable to this case:
[T]he capital jury in Alabama cannot convict a defendant for a lesser included offense; its only options are guilty, not guilty, or it can refuse to return a verdict or to sentence the defendant to death. Thus, the jury, if properly instructed, does not have the "de facto sentencing discretion" that was condemned in Roberts v. Louisiana, [428 U.S.] at 325, 96 S.Ct. 3001 [49 L.Ed.2d 974 (1976)]. Second, the jury under the Alabama statute has the responsibility only to determine guilt or innocence; if the defendant is found guilty, the trial judge must hold a post-trial hearing to receive evidence in aggravation and in mitigation on the issue of sentence. Section 13-11-3, Code of Alabama 1975. The judge must weigh the statutorily defined aggravating and mitigating circumstances present before imposing a sentence, and he is not bound by the jury's verdict and sentence. Id., § 13-11-4. This statutorily required, post-conviction sentencing hearing, wherein the trial judge hears evidence as to aggravating and mitigating circumstances, cures any constitutional defect which might have arisen through the jury's supposed sentencing authority.
It is not constitutionally required that that jury have an input in the sentencing phase of the trial in capital cases.... The trial judge is the sentencing authority under the Alabama death penalty law, and his decision is carefully guided by specified statutory considerations.
In order to get rid of a constitutional infirmity in the sentencing scheme of the old death penalty statute, this Court in Beck v. State, 396 So.2d 645 (Ala.1980), eliminated the mandatory requirement that the jury fix the penalty at death for any defendant convicted of a capital crime and established procedures for bifurcated proceedings for the guilt and sentencing phases of a capital trial. The Court determined that the requirement of § 13-11-2(a), that the jury "shall fix the punishment at death" was permissive and that the jury should be instructed about and follow procedures that would minimize the risk "of an arbitrary and capricious imposition of the death penalty." Id. at 660. The Court went on to delineate the trial and sentencing procedures required to be followed by the judge and jury. The Court stated:
The court shall instruct the jury that in determining whether to fix a punishment of death, the jury must weigh the aggravating and mitigating circumstances in determining whether to fix the punishment at death. The trial court shall instruct the jury to avoid any influence of passion, prejudice or other arbitrary factor while deliberating and fixing the sentence.

If the jury cannot agree on a sentence of death, the defendant shall be *775 sentenced to life imprisonment without parole. If the jury fixes the punishment at death, the court shall hold a hearing as mandated by § 13-11-3 and § 13-11-4. [Emphasis supplied].
Id. at 663.
Hays successfully argued to the Court of Criminal Appeals, and argues again here, that the above language of Beck means that the trial judge has no authority to override a jury's recommendation of life without parole and to impose a death sentence. We disagree.
The language from Beck emphasized above means nothing more than that the jury's sentence recommendation shall be life without parole if the jury cannot agree on a sentence of death. The language was not intended to be construed as making the judge's ultimate sentence bound by the recommendation of the jury. Indeed, to place such a construction on this language would be contrary to the recognition in this state that the judge, and not the jury, is the final sentencing authority in criminal proceedings. We reiterated this principle in Beck when we noted that "[A]s this Court, the Court of Criminal Appeals, and the federal courts have all held, under Alabama's statute the trial judge and not the jury is the sentencing authority." Id. at 659. Our holding in Beck does not alter this principle.
Although we did not address the issue of the trial judge's authority to override the jury's recommendation of a sentence of life without parole in Beck, we are of the opinion that this authority is implied as a necessary and logical consequence of our holding in that case. It is conceded that the death penalty statute made no express provision for the trial judge to override the jury's recommendation of life imprisonment. Code 1975, § 13-11-3, provided in part:
If the jury finds the defendant guilty of one of the aggravated offenses listed in section 13-11-2 and fixes the punishment at death, the court shall thereupon hold a hearing to aid the court to determine whether or not the court will sentence the defendant to death or to life imprisonment without parole.
Additionally, Code 1975, § 13-11-4, provided in part:
Notwithstanding the fixing of the punishment at death by the jury, the court, after weighing the aggravating and mitigating circumstances, may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment without parole, which shall be served without parole; or the court, after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly sentence the defendant to death.
The statutory provisions only expressly allow the trial judge to override the jury's sentence if the jury imposes a sentence of death. However, it was unnecessary for the legislature to include a provision in the statute allowing the trial judge to override the jury's recommended sentence of life without parole because, prior to this Court's decision in Beck, the jury was absolutely prohibited from imposing a sentence of life without parole. The legislature did expressly empower the trial judge to override the only sentence the jury was authorized to recommend under the statute: death.
We are also mindful that after our decision in Beck, the legislature adopted a new death penalty statute which expressly allows the jury to recommend either a sentence of death or a sentence of life without parole. Under this new statutory scheme, the trial judge is given express authority to override the jury's recommendation of death or of life without parole. See Code 1975, § 13A-5-47.
Both the old and the new death penalty statutes clearly embody the principle that the judge is the final sentencing authority and may, therefore, override the recommendation by the jury. Although our decision in Beck has been construed to have altered the sentencing autonomy of the trial judge if the jury renders a sentence of life without parole, see J. Colquitt, The Death Penalty Laws of Alabama, 33 Ala.L.Rev. 213, 324 (1982), this result was not our intention in Beck. In order to *776 uphold the legislative intent expressed in the old death statute that the judge be empowered to override the only sentence that could be recommended by the jury, we hold that the trial court is empowered to override the jury's sentence recommendation of life without parole which we judicially grafted onto the old death statute as an alternate sentence recommendation. We are of the opinion that our holding in the instant case is supported by the United States Supreme Court's decision in Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In Dobbert, the Supreme Court held that there is no ex post facto violation of Article I, § 10, of the Constitution by sentencing a defendant to death under a statutory sentencing scheme in effect at the time of the defendant's trial, but not in effect at the time the crime was committed, which allowed the trial court judge to override a jury's sentencing recommendation of life imprisonment, although the trial court judge had no authority under the statutory sentencing scheme in effect at the time of the commission of the crime (which provided that the death penalty was mandatory unless a majority of the jury recommended mercy) to override the jury's sentence of life imprisonment. In rejecting the Constitutional challenge to the application of the new sentencing scheme, the Dobbert court stated:
[T]he change in the statute was clearly procedural. The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime.
432 U.S. at 293-94, 97 S.Ct. at 2298.
Our decision in Beck v. State, altered the procedures by which the sentence was imposed under the old Alabama death penalty statute, just as the Florida legislature altered the sentencing procedure under Florida law by enacting the new death penalty statute at issue in Dobbert. Our holding in the instant case, interpreting our decision in Beck v. State as allowing for the trial court judge to override the jury's recommendation of life imprisonment, comports with constitutional requirements generally, and is constitutional as applied specifically to Hays in this case.
Additionally, the allowance of the trial judge's override insures that the death penalty is not imposed in a wanton or freakish manner. Indeed, the Supreme Court has held that "Appellate review of death cases is required to make sure that the death penalty will not be wantonly or freakishly imposed." Gregg v. Georgia, 428 U.S. 153 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Our decision in Beck recognized this concern and in that case we opined that in Alabama, prior to the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the death penalty had likely been imposed in an arbitrary or capricious manner based upon racial discrimination. As stated in Beck:
In our research we examined the convictions of the 23 persons who were on death row in Alabama at the time of Furman.

We reviewed those 23 cases to determine the nature of the offense for which those defendants received the death penalty, the race of the defendants and the race of the victims, primarily to determine the profile of defendants selected for the capital penalty, and to determine, if we could, whether racial discrimination might have infected the jury verdicts in those cases. Even though the available data which we reviewed is not sufficient to support a definite conclusion on our part, we are of the opinion that the data we reviewed, if it shows anything, shows that pre-Furman juries may have exercised their "untrammelled discretion" on a racial basis in cases of rape involving a black defendant and a white victim.
396 So.2d at 653.
Although in Beck, our analysis focused upon cases of rape that involved black defendants and white victims, the statistics set forth in footnote three of the Beck opinion reveal another disturbing result. Of the 23 death penalty cases analyzed, not a single one involved a white defendant and a black victim. This result, if attributable to the racial bias of juries directed to the black victim of a crime committed by a *777 white, is as freakish, arbitrary, wanton, or capricious as that obtained when such racial bias is directed to the black defendant.
Judge Bowen, in his dissent in the opinion of the court of Criminal Appeals, aptly observed that "Hays's conduct is abhorrent and shocking, cowardly and indicative of a mindless racism and moral depravity that is closer to a purulent disease than an attitude." 518 So.2d at 765. We cannot imagine a case in which the death penalty is more justified than the instant one. The jury's recommendation of life imprisonment in this case is unquestionably a bizarre result. However, it was a result that was remedied by the action of the trial court; an action that in our opinion insured that the death penalty was not imposed in a wanton or freakish manner.
The trial judge in the case at bar was empowered to override the jury's recommendation of life without parole, and, therefore, the Court of Criminal Appeals' holding on this issue is due to be reversed.

III.
Finally, we address the trial judge's jury instruction. The judge charged the jury:
"... Ladies and gentlemen, your decision now that you must make is to recommend to the Court whether the Defendant be sentenced to death by electrocution or to life imprisonment without the possibility of parole. Yours will be a recommendation to the Court...." (Tr. 830); emphasis supplied).
The state argues that if the trial court had no authority to override the jury's sentence in this case then the above charge is erroneous. The Court of Criminal Appeals found that the charge was incorrect, but held that this issue was not properly before the court on appeal because the state failed to object to the charge at trial. Having previously held that the jury's recommended sentence was not binding on the trial court, we conclude that the above instruction was correct and there can be no error on this ground.
We reverse the Court of Criminal Appeals' judgment ordering the trial court to impose sentence in accordance with the jury's recommendation.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and JONES, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
MADDOX, J., concurs specially.
ALMON and BEATTY, JJ., dissent.
MADDOX, Justice (concurring specially).
As the author of the Beck opinion, I file this special concurrence to state specifically that the opinion of the Court correctly interprets that decision, even though the question of "override" was not presented in that case, nor in any other case filed in this Court.
One of the key statements in Beck is that the legislature, in passing Act No. 213, Reg.Sess. of 1975, Acts of Alabama, p. 701, Code 1975, § 13-11-2(a), which is the same Act under which petitioner was tried, intended to pass a constitutional statute. In my opinion, the holding in this case is a necessary and supporting pillar to insure that there will be no unequal application of the capital penalty in the State of Alabama. Although Beck did not involve a factual situation wherein racial bias might have played a part in either the guilt phase or the sentencing phase of the trial, as the author of the Beck opinion, I was of the opinion that the discriminatory application of the capital penalty, based on race, had played a significant role in the decision of the Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In Beck, I expressed, for the Court, the hope that racial bias would no longer affect the trial or sentencing phases of a capital trial:
"Given the fact that racial bias in the trial and sentencing process may have influenced some past convictions, any improper practice of the past should not affect the present application of the death penalty under the guidelines we set out in this opinion.

*778 "The possibility of racial or other bias in the trial or sentencing process has greatly diminished in Alabama in the last several years. To begin with, the entire judicial system was revamped and Alabama is now recognized nationally as having one of the best judicial systems in the nation. The Death Penalty Act was passed by a legislature which was reapportioned under a federal court order which insured representation of minorities by a wholesale redistricting of the state. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Furthermore, Alabama has adopted a Jury Selection Act which declares, as policy, `that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this article, to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose.' Code 1975, § 12-16-55. Discrimination in jury selection is specifically prohibited. Code 1975, § 12-16-56.
"Finally, the procedural changes mandated by this opinion will further decrease the likelihood that a sentence of death will be imposed in an arbitrary or capricious manner."
By today's decision, this Court, exercising its duty of appellate review, has again firmly come down upon the proposition that racial bias should not affect death sentences in this state. That racial bias, in the meting out of death sentences, is of continuing concern to the Supreme Court of the United States is indicated by its granting certiorari in McClesky v. Kemp, Superintendent, 753 F.2d 877 (11th Cir.1985), cert. granted, 54 U.S.L.W. 3866 (1986), as to the following issues:
"1. Is proof of specific intent or motive to discriminate a necessary element of an Eighth Amendment claim that a State has applied its capital statutes in an arbitrary, capricious, and discriminatory pattern?
"2. To make out a prima facie case under the Fourteenth Amendment, must a capital inmate alleging discrimination in a State's application of its capital statutes present statistical evidence `so strong as to permit no inference other than that the results are a product of racially discriminatory intent or purpose?'
"3. Does a proven disparity in the imposition of capital sentences, reflecting a systematic bias of death-sentencing outcomes against black defendants and those whose victims are white, offend the Eighth and Fourteenth Amendments irrespective of its magnitude?
"4. Does a 20-point racial disparity in death-sentencing rates among that class of cases in which a death sentence is a serious possibility so undermine the evenhandedness of a capital sentencing system as to violate the Eighth or Fourteenth Amendment rights of a death-sentenced black defendant in that class of cases?
"5. Must a capital defendant proffer evidence sufficient to prove that he was personally discriminated against because of his race in order to obtain an evidentiary hearing on allegations that he has been subjected to a State death-sentencing statute administered in an arbitrary or racially discriminatory manner?"
This decision, which reinforces the principle that the trial judge is the sentencing authority, helps to insure uniformity of sentencing in all death cases, not just those which may be infected or tainted by racial bias.
ALMON, Justice (dissenting).
I agree with the view expressed in the dissent filed by Presiding Judge Bowen and Judge McMillan, and also with Part V of Judge Taylor's majority opinion as extended on rehearing.
The facts in this case are horrible and there are no words to adequately condemn the despicable conduct of the defendant. Yet we are merely a court of law and at the time this offense was committed the law did not authorize a trial judge to override a jury verdict of life imprisonment and impose the death penalty.
The death penalty statute in question did not provide for a judicial override, nor does *779 Beck v. State, 396 So.2d 645 (Ala.1980). In fact, Beck in no uncertain language provides just the opposite, at 663:
"If the jury cannot agree on a sentence of death, the defendant shall be sentenced to life imprisonment without parole." (Emphasis added.)[1]
It is without dispute that the defendant's conduct was racially motivated, and it may be that the jury verdict was also, but if indeed this Court is required by the U.S. Supreme Court to engage in a racial balancing test with regard to the imposition of the death penalty, the remedy should be commutation in the proper case, not a judicially decreed death penalty without legislative authority.
The law should be applied with an even hand without regard to race, but if racial prejudice should raise its ugly head, the judicial scales should be balanced by lessening the punishment on the heavy side of the scale, and not by increasing the punishment on the light side. Two wrongs do not make a right.
Suppose, under the new death penalty law, which provides for trial judge override, that a jury returns a verdict of life without parole and the trial judge fails to override and give the death penalty, in a case in which, according to the racial balancing implicit in the majority opinion, the death penalty should be given. Does this Court or the Court of Criminal Appeals have the power to overrule the jury and the trial judge and order a sentence of death without legislative authorization, and without having seen the demeanor of the witnesses? I think not.[2]
If the courts are going to stretch a point of law now and then, it should not result in death. Whatever happened to the prohibition against ex post facto laws? It is clear that the U.S. Supreme Court in Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), has changed its view of the ex post facto clause of the U.S. Constitution, and I assume that, by the majority decision today, this Court has changed its view of the ex post facto clause in the state constitution. Alabama Constitution of 1901, § 22.
However, the majority has failed to address § 7 of the Alabama Constitution, which provides:
"That no person shall be accused or arrested, or detained, except in cases ascertained by law, and according to the form which the same has prescribed; and no person shall be punished but by virtue of a law established and promulgated prior to the offense and legally applied." (Emphasis added.)
I had always thought that, in order for the State to imprison or put to death a citizen for violation of the criminal laws, the sentence had to comply with the criminal statute and with the Alabama and United States Constitutions. Now I am not sure.
BEATTY, J., concurs.

ON APPLICATIONS FOR REHEARING
PER CURIAM.
The State, pursuant to Rule 40, A.R. App.P., asks this Court to extend its opinion *780 and address the propriety and proportionality of the death sentence given to defendant Hays. The United States Constitution does not require the State's highest court to review the propriety of the death sentence in every case in which the sentence is given. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). However, in the interest of justice, we extend our opinion in order to examine both the propriety and the proportionality of the death sentence given in this case.
The facts reveal that Hays and Knowles, both members of the Ku Klux Klan, selected their victim, Michael Donald, solely because he was black. The two men abducted Donald as he was walking along a Mobile Street, robbed him, and took him to a secluded area. There, Hays and Knowles choked Donald with a rope, beat him until he was unconscious, cut his throat with a knife, and took his body back to Mobile, where they hung it from a tree with a rope.
Ala.Code (1975), § 13A-5-53, mandates appellate review of death sentences ordered after July 1, 1981, whereas appellate review in death cases prior to that date, as here, is governed by case law. See Jacobs v. State, 361 So.2d 640 (Ala. 1978), cert. denied, 439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83, (1979); Beck v. State, 365 So.2d 985, 1005 (Ala.Crim.App.), aff'd, 365 So.2d 1006 (Ala.1978), rev'd on other grounds, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); Evans v. State, 361 So.2d 654, 662 (Ala.Crim.App.1977), aff'd, 361 So.2d 666 (Ala.1978), cert. denied, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979). The State has correctly observed that the death penalty should be carried out only after this Court has found it appropriate to do so by independently weighing the aggravating and mitigating circumstances. The particularly brutal and completely unprovoked abduction, robbery, and murder of the victim sets this crime apart even from other robbery-murders that have resulted in death sentences that have been upheld. See Bush v. State, 431 So.2d 555 (Ala.Crim.App.1982), aff'd, 431 So.2d 563 (Ala.1983); Jones v. State, 456 So.2d 366 (Ala.Crim.App.1983), aff'd, 456 So.2d 380 (Ala.1984), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985); Jones v. State, 450 So.2d 165 (Ala.Crim.App.1983), aff'd, 450 So.2d 171 (Ala.1984); Weeks v. State, 456 So.2d 395 (Ala.Crim.App.1983), aff'd, 456 So.2d 404 (Ala.1984); Womack v. State, 435 So.2d 754 (Ala.Crim.App.), aff'd, 435 So.2d 766 (Ala.1983).
The death penalty is authorized as a proper sentence where the defendant robs and intentionally kills the victim. § 13A-5-31(a)(2), Code of Alabama (1975); Kyzer v. State, 399 So.2d 330 (Ala.1981). We cannot conceive of an instance in which the sentence of death could be more proportionate to the nature of the criminal act than in the case before us.
The defendant, likewise, has filed a petition for rehearing. We have considered the arguments made by defendant, and we are of the opinion that his petition is due to be overruled.
85-143DEFENDANT'S APPLICATION OVERRULED.
85-144STATE'S APPLICATION GRANTED; OPINION EXTENDED.
TORBERT, C.J., and MADDOX, JONES, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
BEATTY, J., dissents.
NOTES
[1] The majority opinion cites Judge Colquitt's law review article, 33 Ala.L.Rev. 213, 324 (1982), as having missed the point. I do not think so. The language in Beck is incapable of misconstruction. The majority has simply overruled this aspect of Beck, without having said so, and has applied the new ruling retroactively.
[2] Code 1975, § 13A-5-53(d), does not provide for appellate override:

"After performing the review specified in this section, the Alabama court of criminal appeals, subject to review by the Alabama supreme court, shall be authorized to:
"(1) Affirm the sentence of death;
"(2) Set the sentence of death aside and remand to the trial court for correction of any errors occurring during the sentence proceedings for the imposition of the appropriate penalty after any new sentence proceedings that are necessary, provided that such errors shall not affect the determination of guilt and shall not preclude the imposition of a sentence of death where it is determined to be proper after any new sentence proceedings that are deemed necessary; or
"(3) In cases in which the death penalty is deemed inappropriate under subdivision (b)(2) or (b)(3) of this section, set the sentence of death aside and remand to the trial court with directions that the defendant be sentenced to life imprisonment without parole."