BASCHAB, Presiding Judge, concurring in part and dissenting in part.
concurring in part and dissenting in part.
I concur as to the parts of the majority opinion that address issues other than the penalty phase of the appellant’s trial and the propriety of his sentence. However,
With regard to sentencing in capital cases, § 13A-5-47(e), Ala.Code 1975, provides:
“In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist, and in doing so the trial court shall consider the recommendation of the jury contained in its advisory verdict, unless such a verdict has been waived pursuant to Section 13A-5-46(a) or Section 13A-5-46(g). While the jury’s recommendation concerning sentence shall be given consideration, it is not binding upon the court.”
(Emphasis added.) The emphasized language, which allows a trial court to override a jury’s sentence recommendation in a capital case, has been the subject of much criticism and debate, as well as several Alabama Supreme Court decisions, in recent years.
In Ex parte Taylor, 808 So.2d 1215 (Ala. 2001), by a vote of 7-5, the jury recommended that Taylor be sentenced to imprisonment for life without the possibility of parole, but the trial court overrode the jury’s recommendation and sentenced him to death. Taylor challenged the override, arguing that “there is no standard to guide the trial judge in determining whether to accept or to reject the jury’s recommended sentence.” Ex parte Taylor, 808 So.2d at 1218 (footnote omitted). The Alabama Supreme Court examined the provisions for a jury override in Alabama and concluded:
“This Court held in Ex parte Jones, 456 So.2d 380 (Ala.1984), that the Constitution of the United States does not require the ‘[adoption of] specific limitations on the trial court’s power to over *446 ride the jury’s advisory verdict’ and that Alabama’s capital-sentencing procedure provides sufficient protection for capital defendants because ‘[t]he whole catalog of aggravating circumstances must outweigh mitigating circumstances before a trial court may opt to impose the death penalty by overriding the jury’s recommendation’ of life imprisonment. 456 So.2d at 382. Under Alabama’s capital-sentencing procedure, the trial judge must make specific written findings regarding the existence or nonexistence of each aggravating circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala.Code 1975. In making these findings, the trial judge must consider a jury’s recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala.Code 1975 (‘in [weighing the aggravating and mitigating circumstances] the trial court shall consider the recommendation of the jury contained in its advisory verdict’). Construing subsection (e) together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury’s recommendation the consideration he gave it. McCausland v. Tide-Mayflower Moving & Storage, 499 So.2d 1378, 1382 (Ala.1986) (stating that subsections of a statute ‘should be construed together to ascertain the meaning and intent of each’). Therefore, we hold that Alabama’s capital-sentencing procedure does not result in the imposition of the death sentence in an arbitrary and capricious manner in violation of the Fourteenth Amendment.
“In this case, the trial judge stated that ‘[t]he sentence recommendation of a properly functioning jury is entitled to great respect.’ He reasoned, however, that ‘[w]hile the jurors in this case were cooperative, harmonious, diligent, and attentive, some jurors’ outbursts of emotion after they found the defendant guilty of capital murder indicated that they were overwhelmed by their impending duty to consider the death penalty as required by law.’ The trial judge then concluded that the crimes proved against Taylor were ‘abominably aggravated and, at best, only faintly mitigated.’ Thus, the trial judge considered the jury’s recommendation, as required by Alabama’s death-penalty statute, but permissibly assessed it very little weight, given the particular circumstances of this ease. Therefore, we agree with the conclusion of the Court of Criminal Appeals that ‘the trial court complied with the sentencing scheme of Alabama’s death-penalty statute and that the sentence it imposed, overriding the jury’s recommendation, met constitutional requirements and was not arbitrary, discriminatory, or fundamentally unfair.’ Taylor v. State, 808 So.2d [1148] at 1190 [(Ala.Crim.App.2000)].”
Ex parte Taylor, 808 So.2d at 1219 (footnote omitted; emphasis added).
In Ex parte Carroll, 852 So.2d 833 (Ala. 2002), by a vote of 10-2, the jury recommended a sentence of imprisonment for life without the possibility of parole, but the trial court overrode that recommendation and sentenced Carroll to death. Ultimately, the Alabama Supreme Court reversed the trial court’s decision to override the jury’s recommendation, explaining as follows:
“In its revised sentencing order on the second remand, the trial court explained its override of the jury’s recommendation of a sentence of life imprisonment without the possibility of parole as follows:
“ ‘ “The jury did not have before [it] the presentence report, background information and history of the defendant, his family, education and work history. The jury was not aware of *447 the fact that the defendant had served a period of incarceration and had just been released for a very short time when he obtained a weapon and committed this intentional murder during a robbery. The jury did not view and was not privy to the expression of the pain of the victim’s family expressed at the sentencing hearing before the Court.
“ ‘ “Although this Court always gives, and did in this case give, great weight and consideration to a jury’s recommendation as to punishment, considering the above, the Court found it appropriate to overrule the jury’s recommendation of life without parole.” ’
“Carroll [v. State,] 852 So.2d [830,] 832 [ (Ala.Crim.App.2001) ] (quoting the trial court’s order). We find two aspects of the trial court’s order troubling.
“First, it is clear from the foregoing excerpt from the trial court’s order that the trial court considered Carroll’s incarceration for youthful-offender adjudications in negating the mitigating circumstance of no significant criminal history. We specifically stated in Ex parte Burgess, 811 So.2d 617 (Ala.2000), that a trial court is not allowed to do so. ... Because Carroll’s incarceration shortly before the murder in this case was the result of youthful-offender adjudications, the trial court’s second order on remand, justifying its use of Carroll’s juvenile record as the basis for giving little or no weight to the mitigating circumstance that Carroll had no significant history of prior criminal activity, conflicts with our observation in [Ex parte] Carroll [, 852 So.2d 821 (Ala.2001) ] (‘Carroll III ’) and with our direction in Ex parte Burgess.
“Second, in light of the wish of the victim’s family that Carroll be sentenced to life imprisonment without parole rather than sentenced to death, evidence that was admitted without objection, we find it hard to reconcile the trial court’s reliance upon the ‘pain of the victim’s family’ as one of its reasons for overriding the jury’s recommendation.
“Although the trial court stated that it ‘always gives, and did in this case give, great weight and consideration to a jury’s recommendation as to punishment,’ under the circumstances here presented, where other aspects of the trial court’s order on remand are problematic, it appears that it gave insufficient weight to the jury’s recommendation that Carroll be sentenced to life imprisonment without parole. In this case, the recommendation was entitled to considerable weight.

“We take this opportunity to further explain the effect of a jury’s recommendation of life imprisonment without the possibility of parole. Such a recommendation is to be treated as a mitigating circumstance. The weight to be given that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the identity of the ‘triggerman’ or a recommendation of leniency by the victim’s family; the jury’s recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.

“Based on an appellate court’s duty to independently weigh the aggravating and mitigating circumstances in a capital case, and treating the jury’s recommen *448 dation as a mitigating circumstance in this case, we conclude that the trial court’s override in this case of the jury’s recommended sentence of life imprisonment without parole and that court’s subsequent sentence of death were improper under the circumstances presented here. See § 13A-5-53(a) and (b), Ala.Code 1975. Here we have overwhelming support of a sentence of life imprisonment without the possibility of parole, as evidenced by the jury’s vote of 10-2 for such a sentence. Furthermore, Justice Houston in a special writing in Carroll III ably marshaled all of the factors that make the sentence of death in this case excessive and disproportionate.
“ ‘Given the jury’s recommendation of life imprisonment without parole; the recommendation of the victim’s family that the defendant be sentenced to life imprisonment without parole; the fact that the defendant was 17 years old when he committed the crime; and the circumstances of the crime (particularly that the defendant made no attempt to kill the witnesses to the crime), ... the sentence of death is excessive and disproportionate.’
“852 So.2d at 828 (Houston, J., concurring in part and dissenting in part). Because of Carroll’s age at the time of the offense, his lack of a significant criminal history, and the recommendation of the victim’s family that he be sentenced to life imprisonment without parole, the jury’s 10-2 recommendation that he not be sentenced to death tips the scales in favor of following the jury’s recommendation. We therefore reverse the judgment of the Court of Criminal Appeals as to Carroll’s sentence and remand the case for that court to instruct the trial court to resentence Carroll following the jury’s recommendation of life imprisonment without the possibility of parole.”
Ex parte Carroll, 852 So.2d at 835-37 (footnote omitted).
Finally, in Ex parte Tomlin, 909 So.2d 283, 284-85 (Aia.2003),
“Phillip Wayne Tomlin was convicted, for the fourth time, of the intentional murders of Bruñe and Moore, an offense made capital because two people were intentionally killed pursuant to one act or a series of acts. See § 13 — 11— 2(a)(10), Ala.Code 1975 (repealed).
“The jury at Tomlin’s fourth trial was not asked to make a sentencing recommendation. Instead, the parties stipulated that the jury at Tomlin’s third trial, by a vote of 12-0, had recommended that Tomlin be sentenced to life imprisonment without the possibility of parole. After a sentencing hearing, the trial court overrode the jury’s recommendation and sentenced Tomlin to death.”
The Alabama Supreme Court reversed this court’s judgment, in which we affirmed the trial court’s decision to override the jury’s recommendation, explaining:
“The trial court then explained its weighing of the aggravating circumstances and the mitigating circumstances and proceeded to override the jury’s recommendation, stating:
“ ‘The Court has carefully, and at length, reviewed the aggravating circumstances and the statutory and non-statutory mitigating circumstances and has given serious consideration to the unanimous recommendation of the jury for life [imprisonment] without parole and the evidence received by the jury at the hearing.
“ ‘The other perpetrator in this crime, John Ronald Daniels, was convicted of the capital offense of first degree murder of the same two people *449 and [was] sentenced to death. This Court is charged with the duty to insure that the death penalty is not imposed in a freakish, arbitrary, wanton or capricious manner. That is the reason this Court has the authority to reject a jury’s recommendation of death and impose life [imprisonment] without parole and conversely the authority to reject a jury’s recommendation of life without parole and impose death, if by doing either the Court prevents such prohibited imposition.
“ ‘In light of the peculiar circumstances in this case with regard to this defendant, this Court is of the opinion that the acceptance of the jury’s recommendation would be wrong.
“ ‘For our judicial system to say, under the circumstances of this case, that the hit man should be sentenced to death but that the hirer, the planner, the cold avenger and the eo-exe-cutioner should be sentenced to life [imprisonment] without parole is an aberration; a freak that cannot be allowed.
“ ‘In view of the foregoing, this Court, even though the Court finds and considers only one aggravating circumstance under its interpretations of Ex parte Hays, 518 So.2d 768 (Ala. 1986), cert. denied, Hays v. Alabama, [485 U.S. 929,] 108 S.Ct. 1099, overrides the jury recommendation and sentences [Tomlin] to death.’
“We conclude that, under the circumstances presented here, the trial court’s override of the jury’s recommended sentence of life imprisonment without parole and that court’s subsequent sentence of death were improper.
‘“[T]he death penalty should be carried out only after this Court has found it appropriate to do so by independently weighing the aggravating and mitigating circumstances.’ Ex parte Hays, 518 So.2d 768, 780 (Ala.1986)(opinion on rehearing). Therefore, while the trial court, acting without the guidance offered by Carroll, gave ‘serious consideration to the unanimous recommendation of the jury for life [imprisonment] without parole,’ we are compelled to treat the jury’s recommendation as a mitigating circumstance. Indeed, we must give that mitigating circumstance great weight.
“ ‘The weight to be given [a jury’s recommendation of life imprisonment without the possibility of parole] should depend upon the number of jurors, recommending a sentence of life imprisonment without parole.’ Carroll, 852 So.2d at 836. In Carroll, we found that a jury’s 10-2 vote for a sentence of life imprisonment without the possibility of parole demonstrated ‘overwhelming support’ of such a sentence. 852 So.2d at 887. Therefore, it is only logical to conclude that a unanimous recommendation like the one here provides even more ‘overwhelming support’ of such a sentence and, therefore, must be afforded great weight.
“ ‘The weight to be given [a jury’s recommendation of life imprisonment without the possibility of parole] should depend ... also upon the strength of the factual basis for such a recommendation in the form of information known to the jury.’ Carroll, 852 So.2d at 836. Here, the State does not question ‘the strength of the factual basis for [the jury’s] recommendation.’ Indeed, the State argues only that ‘the [trial] court considered factual information known to the jury in finding the existence of one aggravating factor — first degree murder wherein two persons were killed.’ State’s brief, at 34-35. Thus, we must *450 conclude that the jury’s recommendation rested upon an adequate factual basis.
“ ‘[T]he jury’s recommendation [of life imprisonment without the possibility of parole] may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.’ Carroll, 852 So.2d at 836. Here, the trial court overrode the jury’s recommendation, because ‘[t]he other perpetrator in this crime, John Ronald Daniels, was convicted of the capital offense of first degree murder of the same two people and [was] sentenced to death.’ Although the jury was not aware of Daniels’s sentence, his sentence cannot properly be used to undermine a mitigating circumstance.
“As noted in the State’s brief, ‘Tomlin ... argues ... that the trial court erred in considering his co-defendant’s sentence because it is not an aspect of Tomlin’s character or of the crime.’ State’s brief, at 37. The State admits that ‘Tomlin’s reasoning is correct to the extent that he argues that his co-defendant’s sentence should not be treated as a mitigating or aggravating circumstance. It is not an aspect of [Tomlin’s] character or of the crime.’ State’s brief, at 37-38. It would be inconsistent with the State’s admission for this Court to hold that Daniels’s sentence could properly be used to undermine the jury’s recommendation of life imprisonment without the possibility of parole. See Coulter v. State, 438 So.2d 336, 345 (Ala. Crim.App.1982), aff'd, 438 So.2d 352 (Ala.1983) {‘In the sentencing phase of the trial, the fact that an alleged accomplice did not receive the death penalty is no more relevant as a mitigating factor for the defendant than the fact that an alleged accomplice did receive the death penalty would be as an aggravating circumstance against him.’) (emphasis added).
“For the foregoing reasons, we reverse the judgment of the Court of Criminal Appeals as to Tomlin’s sentence and remand the case for that court to instruct the trial court to resentence Tomlin, following the jury’s recommendation of life imprisonment without the possibility of parole.”
Ex parte Tomlin, 909 So.2d at 286-87 (footnote omitted; emphasis added).
Although neither this court nor the Alabama Supreme Court has had occasion to determine whether the decisions in Ex parte Carroll and Ex parte Tomlin apply retroactively to cases on collateral review, we find the following comments by the Alabama Supreme Court to be instructive[5]:
“Recently, the Supreme Court has held that new rules will not be announced or applied, with limited exceptions, in federal habeas corpus cases brought by state prisoners after their convictions have become final. See, e.g., Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, *451 111 L.Ed.2d 30 (1990); Butler v. McKellar, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The Court has contemporaneously held, however, that
“ “When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions. See Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360 (1932) ("We think the federal constitution has no voice upon the subject [of whether a state court may decline to give its decisions retroactive effect]”).’
“American Trucking Associations, Inc. v. Smith, 496 U.S. 167, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148 (1990) (brackets in original).
“A useful test for retroactive application in criminal cases was articulated by the Supreme Court as follows:
“ Tn deciding whether to apply newly adopted constitutional rulings retroactively, we have considered three criteria: (1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice.’
“Holliday v. United States, 394 U.S. 831, 832, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986).”
Ex parte Coker, 575 So.2d 43, 52 (Ala. 1990).
“Although circumstances occasionally dictate that judicial decisions should be applied prospectively, James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 536, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), retroactive application of judgments is ‘overwhelmingly the normal’ practice. Id. at 535. Retroactivity ‘is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law.... It also reflects the declaratory theory of law, ... according to which the courts are understood only to find the law, not to make it.’ Id. at 535-36. The United States Supreme Court has suggested consideration of the following factors in choosing whether to apply a judicial decision prospectively:
“ ‘First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., [392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231 (1968) ] ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., Allen v. State Board of Elections, [393 U.S. 544, 572, 89 S.Ct. 817, 835, 22 L.Ed.2d 1 (1969) ]. Second, it has been stressed that “we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.” Linkletter v. Walker, [381 U.S. 618, 629, 85 S.Ct. 1731, 1737-38, 14 L.Ed.2d 601 (1965) ]. Finally, we have weighed the inequity imposed by retroactive application, for “[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the ‘injustice or hardship’ by a holding of nonretroac-tivity.” ’
“Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 *452 (1971)[, but see Harper v. Virginia Dep’t of Taxation, 509 U.S. 86 (1993) ].”
McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156, 165 (Ala.1996).
First, based on the language in Ex parte Taylor, it appears that the purpose of Ex parte Carroll and Ex parte Tomlin is to assure that death sentences are not imposed in an arbitrary and capricious manner. Retroactive application of these decisions would surely further that purpose. Second, the decisions in Ex parte Carroll and Ex parte Tomlin do not set forth entirely new principles of law. Rather, they provide clarification or guidance with regard to the requirements set forth in § 13A-5^47(e), Ala.Code 1975. Finally, retroactive application would not produce inequities in sentencing. Rather, if anything, it should serve to correct inequities in sentencing. Therefore, the Alabama Supreme Court’s decisions in Ex parte Carroll and Ex parte Tomlin should apply retroactively, even to cases on collateral review.
Turning to the specific facts of this case, I first note that the judge who presided over the Rule 32 proceedings is not the judge who sentenced the appellant. Thus, it appears that the sentencing judge is no longer on the bench.
I further note that, in its sentencing order, the trial court found only one statutory aggravating circumstance — the appellant committed the murders while he was engaged in the commission of a robbery. See § 13A-5-49(4), Ala.Code 1975. It also found the existence of only one statutory mitigating circumstance — the appellant did not have a significant history of prior criminal activity. See § 13A — 5—51(1), Ala.Code 1975. The trial court found the following to be nonstatutory mitigating circumstances — (1) the appellant surrendered to the authorities and confessed to his involvement in the murders, although he waited until one month after the murders to do so; and (2) the jury recommended a sentence of imprisonment for life without the possibility of parole. With regard to his consideration of the jury’s sentence recommendation, the trial judge specifically stated:
“The Court does find that the jury’s recommendation of life imprisonment without parole is a mitigating factor and the Court has considered said mitigating factor at the sentence hearing. However, the Jury was allowed to hear an emotional appeal from the defendant’s wife. The Court further finds that the defendant’s problems during his childhood is not a mitigating factor.
“There was also evidence presented to the jury that Mark Moore was the instigator of the killings of Harold and Joey Pugh, but that fact alone does not make the defendant any less culpable and is not a mitigating factor. The defendant was able and capable to make choices.
“The Court has also considered the Pre-Sentence Investigation Report as set out in Section 13A-5-47, Code of Alabama, as amended, in determining a sentence in this case.
“The Court having considered the aggravating circumstances and the mitigating circumstances, finds that the aggravating circumstances due to the nature of the crime and the defendant’s involvement in it outweighs the mitigating circumstances presented, and the mitigating factor that the jury recommended a sentence of life imprisonment without parole and the vote was 11 for life and 1 for death.
“The Court does find that there is a reasonable basis for enhancing the jury’s recommendation of life imprisonment without parole for the reasons stated herein, and this was a murder of [an] adult man and his young son during a *453 robbery, and the defendant had the opportunity to reflect and withdraw from his actions and chose not [to] do so; that the defendant’s capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was not substantially impaired.”
(A.C.R. 140.)
The trial judge entered his sentencing order before the Alabama Supreme Court released its decisions in Ex parte Taylor, Ex parte Carroll, and Ex parte Tomlin. Nevertheless, he did state specific reasons for giving the jury’s recommendation the consideration he gave it, as required by Ex parte Taylor, and did treat the jury’s recommendation as a mitigating circumstance, as required by Ex parte Carroll. The trial judge did not specifically state what weight he gave the jury’s recommendation. However, it does not appear to have been considerable, as was required with regard to a 10-2 recommendation in Ex parte Carroll, or great, as was required with regard to a 12-0 recommendation in Ex parte Tomlin. Because the jury recommended a sentence of imprisonment for life without the possibility of parole by a margin of 11-1, it is reasonable to conclude that it was entitled, at a minimum, to considerable weight. Moreover, as the trial judge recognized in his sentencing order, there was information before the jury that established that the jury’s recommendation rested upon an adequate factual basis. Specifically, the trial judge made reference to an' emotional appeal by the appellant’s wife and to evidence regarding problems during the appellant’s childhood. Finally, the trial judge did not cite to any information that was not known to the jury when it overrode the jury’s recommendation.
Under these specific circumstances, giving considerable weight to the jury’s sentence recommendation when weighing the above-referenced mitigating circumstances against the one aggravating circumstance, I would conclude that the trial court erred in overriding the jury’s recommended sentence of imprisonment for life without the possibility of parole. Therefore, this court should remand this case to the circuit court for that court to resentence the appellant, following the jury’s recommendation, to imprisonment for life without the possibility of parole.

. In arguing that Ex parte Catrott and Ex parte Tomlin should be applied retroactively on collateral review, the appellant relies on Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Also, the majority cites to Teague when questioning whether these decisions apply retroactively. However, Alabama appellate courts have relied on Teag-ue primarily when deciding whether to apply United States Supreme Court decisions retroactively rather than when deciding whether to apply Alabama appellate court decisions retroactively. See, e.g., Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005); Clemons v. State, [Ms. CR-01-1355, August 29, 2003]-So.3d (Ala.Crim.App.2003), rev'd on other grounds, [Ms. 1041915, May 4, 2007] - So.3d - (Ala.2007); Sanders v. State, 815 So.2d 590 (Ala.Crim.App.2001).