On January 2, 1977, the bodies of Richard Brune and Cheryl Moore were found on an exit ramp from I-10 in Mobile County. Both had died as the result of multiple gunshot wounds. In 1999, Phillip Wayne Tomlin was convicted, for the fourth time, of the intentional murders of Brune and Moore, an offense made capital because *Page 285 
two people were intentionally killed pursuant to one act or a series of acts. See § 13-11-2(a)(10), Ala. Code 1975 (repealed).
The jury at Tomlin's fourth trial was not asked to make a sentencing recommendation. Instead, the parties stipulated that the jury at Tomlin's third trial, by a vote of 12-0, had recommended that Tomlin be sentenced to life imprisonment without the possibility of parole. After a sentencing hearing, the trial court overrode the jury's recommendation and sentenced Tomlin to death.
The Court of Criminal Appeals affirmed Tomlin's conviction and sentence. Tomlin v. State, 909 So.2d 213 (Ala.Crim.App. 2002).[1] Tomlin petitioned this Court for certiorari review, which was granted by an order limiting "[t]he scope of review . . . to sentencing/penalty-phase issues." The dispositive issue is whether the decision of the Court of Criminal Appeals conflicts with this Court's decision in Ex parte Carroll,852 So.2d 833 (Ala. 2002).
In Carroll, this Court stated:
 "We take this opportunity to further explain the effect of a jury's recommendation of life imprisonment without the possibility of parole. Such a recommendation is to be treated as a mitigating circumstance. The weight to be given that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the identity of the `triggerman' or a recommendation of leniency by the victim's family; the jury's recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance."
852 So.2d at 836 (footnote omitted). The State urges us to overrule Carroll, "at least insofar as it declared that a recommendation of life by the jury `is to be treated as a mitigating circumstance.'" State's brief, at 36. We decline to do so.
Unlike the defendant in Carroll, Tomlin was convicted and sentenced under the 1975 death-penalty statute, not the current death-penalty statute. However, the State has expressed its willingness to assume that the principles enunciated in Carroll
are applicable to a case tried under the 1975 statute, and, indeed, the State makes no argument to the contrary. See State's brief, at 32. Therefore, we will apply those principles to the facts of this case.
In its sentencing order, the trial court found only one aggravating circumstance: "The only aggravating circumstance . . . in this case is the one contained in the definition of the capital offense itself: that [Tomlin] committed murder in the first degree wherein two human beings were intentionally killed by the defendant by a series of acts." While the trial court found no statutory mitigating circumstances, it found several nonstatutory mitigating circumstances:
 "As to non-statutory mitigating circumstances, the Court finds that the defendant has been a model prisoner since incarcerated and has attempted to improve himself spiritually and educationally. The Court further finds that *Page 286 
the defendant has no significant history of violent behavior nor an apparent reputation for such. (The pre-sentence investigation report of October 26, 1978 does reflect one incident.) The Court further finds that the defendant has been a source of parental support for his children."
The trial court then explained its weighing of the aggravating circumstances and the mitigating circumstances and proceeded to override the jury's recommendation, stating:
 "The Court has carefully, and at length, reviewed the aggravating circumstances and the statutory and non-statutory mitigating circumstances and has given serious consideration to the unanimous recommendation of the jury for life [imprisonment] without parole and the evidence received by the jury at the hearing.
 "The other perpetrator in this crime, John Ronald Daniels, was convicted of the capital offense of first degree murder of the same two people and [was] sentenced to death. This Court is charged with the duty to insure that the death penalty is not imposed in a freakish, arbitrary, wanton or capricious manner. That is the reason this Court has the authority to reject a jury's recommendation of death and impose life [imprisonment] without parole and conversely the authority to reject a jury's recommendation of life without parole and impose death, if by doing either the Court prevents such prohibited imposition.
 "In light of the peculiar circumstances in this case with regard to this defendant, this Court is of the opinion that the acceptance of the jury's recommendation would be wrong.
 "For our judicial system to say, under the circumstances of this case, that the hit man should be sentenced to death but that the hirer, the planner, the cold avenger and the co-executioner should be sentenced to life [imprisonment] without parole is an aberration; a freak that cannot be allowed.
 "In view of the foregoing, this Court, even though the Court finds and considers only one aggravating circumstance under its interpretations of Ex parte Hays, 518 So.2d 768 (Ala. 1986), cert. denied, Hayes v. Alabama, [485 U.S. 929,] 108 S.Ct. 1099[, 99 L.Ed.2d 262 (1988)], overrides the jury recommendation and sentences [Tomlin] to death."
We conclude that, under the circumstances presented here, the trial court's override of the jury's recommended sentence of life imprisonment without parole and that court's subsequent sentence of death were improper.
"[T]he death penalty should be carried out only after this Court has found it appropriate to do so by independently weighing the aggravating and mitigating circumstances." Ex parte Hays,518 So.2d 768, 780 (Ala. 1986) (opinion on rehearing). Therefore, while the trial court, acting without the guidance offered byCarroll, gave "serious consideration to the unanimous recommendation of the jury for life [imprisonment] without parole," we are compelled to treat the jury's recommendation as a mitigating circumstance. Indeed, we must give that mitigating circumstance great weight.
"The weight to be given [a jury's recommendation of life imprisonment without the possibility of parole] should depend upon the number of jurors recommending a sentence of life imprisonment without parole." Carroll, 852 So.2d at 836. InCarroll, we found that a jury's 10-2 vote for a sentence of life imprisonment without the possibility of parole demonstrated *Page 287 
"overwhelming support" of such a sentence. 852 So.2d at 837. Therefore, it is only logical to conclude that a unanimous recommendation like the one here provides even more "overwhelming support" of such a sentence and, therefore, must be afforded great weight.
"The weight to be given [a jury's recommendation of life imprisonment without the possibility of parole] should depend . . . also upon the strength of the factual basis for such a recommendation in the form of information known to the jury."Carroll, 852 So.2d at 836. Here, the State does not question "the strength of the factual basis for [the jury's] recommendation." Indeed, the State argues only that "the [trial] court considered factual information known to the jury in finding the existence of one aggravating factor — first degree murder wherein two persons were killed." State's brief, at 34-35. Thus, we must conclude that the jury's recommendation rested upon an adequate factual basis.
"[T]he jury's recommendation [of life imprisonment without the possibility of parole] may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance." Carroll, 852 So.2d at 836. Here, the trial court overrode the jury's recommendation, because "[t]he other perpetrator in this crime, John Ronald Daniels, was convicted of the capital offense of first degree murder of the same two people and [was] sentenced to death."[2] Although the jury was not aware of Daniels's sentence, his sentence cannot properly be used to undermine a mitigating circumstance.
As noted in the State's brief, "Tomlin . . . argues . . . that the trial court erred in considering his co-defendant's sentence because it is not an aspect of Tomlin's character or of the crime." State's brief, at 37. The State admits that "Tomlin's reasoning is correct to the extent that he argues that his co-defendant's sentence should not be treated as a mitigating or aggravating circumstance. It is not an aspect of [Tomlin's] character or of the crime." State's brief, at 37-38. It would be inconsistent with the State's admission for this Court to hold that Daniels's sentence could properly be used to undermine the jury's recommendation of life imprisonment without the possibility of parole. See Coulter v. State, 438 So.2d 336, 345
(Ala.Crim.App. 1982), aff'd, 438 So.2d 352 (Ala. 1983) ("Inthe sentencing phase of the trial, the fact that an alleged accomplice did not receive the death penalty is no more relevant as a mitigating factor for the defendant than the fact that an alleged accomplice did receive the death penalty would be as an aggravating circumstance against him.") (emphasis added).
For the foregoing reasons, we reverse the judgment of the Court of Criminal Appeals as to Tomlin's sentence and remand the case for that court to instruct the trial court to resentence Tomlin, following the jury's recommendation of life imprisonment without the possibility of parole.
REVERSED AND REMANDED WITH DIRECTIONS.
LYONS and HARWOOD, JJ., concur.
HOUSTON and JOHNSTONE, JJ., concur specially.
SEE, BROWN, and STUART, JJ., concur in the result.
[1] The Court of Criminal Appeals' opinion provides a detailed account of the facts of this case and its procedural history.
[2] "The record reflects that Daniels died of natural causes in 1995 while he was incarcerated in Holman Penitentiary on Alabama's death row." Tomlin v. State, 909 So.2d at 281 n. 2. *Page 288