On Remand from the Alabama Supreme Court 
*

JOINER, Judge.
Anthony Lee Stanley appealed his conviction and sentence of death for the intentional murder of Henry Smith, made capital because it was committed during the course of a first-degree robbery. See § 13A-5-40(a)(2), Ala.Code 1975. This Court affirmed his conviction but remanded the case for the trial court “to amend its sentencing order to clarify its findings regarding the judicial override of the jury’s recommendation of life imprisonment without parole” and “to reweigh the aggravating circumstances and the mitigating circumstances and resentence Stanley.” Stanley v. State, 143 So.3d 230, 316 (Ala.Crim.App.2011) (“Stanley /”). The trial court complied with our instructions, and, on return to remand, this Court on August 26, 2011, affirmed the trial court’s amended sentencing order. Stanley v. State, 143 So.3d 316 (Ala.Crim.App.2011) (opinion on return to remand) (“Stanley II”).
The Alabama Supreme Court, in an order dated August 17, 2012, summarily vacated our judgment in Stanley II and remanded the case “with instructions that [the Court of Criminal Appeals] allow the parties to brief the issues raised by the trial court’s amended sentencing order, *322 and then address those issues by further opinion.” Ex parte Stanley (No. 1110298). In compliance with the Supreme Court’s instructions, we ordered briefing on the amended sentencing order. The parties completed briefing on November 28, 2012. We now address the issues Stanley has raised regarding the amended sentencing order, and we again review the amended sentencing order and affirm Stanley’s sentence of death.

Discussion

In its original sentencing order and again in its amended sentencing order, the trial court found that the State sufficiently proved the existence of three aggravating circumstances: (1) that Stanley had been previously convicted of a felony involving the use or threat of violence to the person; (2) that Stanley committed the capital offense of intentional murder while he was an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit, a first-degree robbery; and (3) that Stanley committed a capital offense that was especially heinous, atrocious, or cruel when compared to other capital offenses. See §§ 13A-5-47(d); 13A-5-49(2), (4), and (8); 13A-5-50, Ala.Code 1975; and Stanley I, 143 So.3d at 317.
As to the statutory mitigating circumstances, the trial court in its original sentencing order considered the statutory mitigating circumstances and found none to exist. See §§ 13A-5^7(d) and 13A-5-51, Ala.Code 1975; Stanley I, 143 So.3d at 317. The trial court reiterated in its amended sentencing order that it found no statutory mitigating circumstances.
As to the trial court’s findings concerning the nonstatutory mitigating circumstances, in its second amended sentencing order the trial court stated that Stanley presented evidence regarding his family history and his alcohol and drug abuse. Stanley presented the testimony of a mitigation specialist and of his parents and his older sister concerning their remorse about the difficulties of his childhood, of the effects on Stanley of drug and alcohol use, and of the improvement in Stanley’s behavior since his incarceration. The trial court stated that, although Stanley presented this evidence in mitigation, it did not find and consider this evidence to be evidence of a nonstatutory mitigating circumstance. See §§ 13A-5-47(d) and 13A-5-52, Ala. Code 1975.
The trial court, in its amended sentencing order, considered and found that the jury’s recommendation of a sentence of life imprisonment without the possibility of parole was a nonstatutory mitigating circumstance, and it assigned the jury’s advisory verdict significant weight. See § 13A-5-47(e), Ala.Code 1975; § 13A-5-52, Ala. Code 1975; Ex parte Tomlin, 909 So.2d 283, 286 (Ala.2003); Ex parte Carroll, 852 So.2d 833, 836 (Ala.2002); Ex parte Taylor, 808 So.2d 1215 (Ala.2001). The trial court then stated its reasons for giving the jury’s recommendation the consideration it gave it, noting specifically that the jury’s vote in favor of life imprisonment was 8 to 4.
Thereafter, the trial court reweighed the aggravating circumstances and the mitigating circumstances and again sentenced Stanley to death.
The trial court stated in its amended sentencing order that it “adoptfed] all portions of its original Order of Court on Imposition of Sentence in this cause dated June 19, 2007, as if fully set out herein, unless amended in this Order.” (RTR, C. 219.)
In his brief on return to remand, Stanley identifies five issues.
*323 I.
As noted, in its amended sentencing order, the trial court found that the jury’s recommendation of a sentence of life imprisonment without the possibility of parole was a nonstatutory mitigating circumstance, and the trial court therefore assigned the jury’s advisory verdict significant weight. The trial court, in rejecting the jury’s recommendation, stated specifically:
“The court understands and appreciates the significance of the jury’s recommendation, gives it significant weight, and, as mentioned, has considered this mitigating circumstance. The court does note though that the vote of the jury was 8-4 or 66.66% in favor of life without parole.
“The court further understands and appreciates that such a verdict, in Alabama, is advisory for the trial court and that the final decision, as relates to sentencing, lies with the trial court.
“This court, accordingly, has reviewed testimony given during the guilt, penalty, and sentencing phases of the trial; Alabama law pertaining to sentencing; the aggravating and mitigating circumstances outlined in the court’s original sentencing order and in this order.
“In addition, the Court would state that at the time the jury took this case under advisement they had just heard emotional testimony, during the penalty phase, from [Stanley’s] family, including his parents and older sister. This familial testimony included remorse over [Stanley’s] childhood, the social effects drug and alcohol usage had on [Stanley]; how caring [Stanley] was and had become; improvement in [Stanley’s] behavior since incarcerated and in general, how hard this has been on their family.
“The jury had also heard testimony from mitigation specialist, Dr. J. Davis Martin, who likewise testified as to [Stanley’s] troubled youth, and that, ‘if [Stanley] is sentenced to death that [Stanley’s parents’] health would deteriorate very traumatically and quickly ... so not only would [Stanley] be put to death, the whole family unit would essentially break apart.’
“It was indeed, gut-wrenching testimony, and the court can fully understand a jury feeling compassion for the Stanley family.
“Nevertheless, the court finds that the three (3) aggravating circumstances it has found to exist far outweigh the non-statutory mitigating circumstance even though it exists in the form of a jury verdict.
“Further, the Court finds that many people live in far worse family circumstances than what [Stanley] experienced; that many people have suffered from the ravages of drug and alcohol abuse such as [Stanley]; that many people have grown up in socially economically impoverished conditions such as [Stanley]; yet, few, indeed very few, go on to commit a capital murder crime of the nature [Stanley] committed.
“Further, the court finds no credible evidence that any of these factors influenced the commission of the crime [Stanley] committed.
“The court cannot fathom the horror and terror the victim experienced from the brutality [Stanley] perpetrated on him. As this court stated in its original sentencing order, to-wit:
“ ‘By any standard acceptable to civilized society, this crime was extremely gruesome and barbaric. It was perpetuated with a heartless infliction of brutality and with utter indifference to the suffering of the victim and with a total disregard of human life. The court recognizes *324 that all capital offenses are heinous, atrocious and cruel to some extent, but the degree of heinousness, atrociousness and cruelty which characterizes this offense exceeds that which is common to all capital offenses.’
“It is difficult for this court to imagine any case more deserving of the death penalty. The senseless barbaric and an-imalistic nature of this crime provides a major reason this court believes a jury override not only is justified but necessary under the circumstances and for justice to prevail.
“This court does not make this decision lightly but with a great deal of thought and deliberation buttressed by a strong sense of behavior any civilized society can withstand.
“Therefore, after consideration of all the matters that were presented to this court, the testimony heard at trial and at the sentencing hearing before this court, both in aggravation and mitigation and after the analysis of the aggravating and mitigating circumstances set out in the court’s original sentencing order and this amended sentencing order and for the reasons stated in this order, the Court does now find that the aggravating circumstances outweigh the mitigating circumstances, and the Court does hereby override the jury’s recommendation of life without parole and does affix [Stanley’s] punishment at death by lethal injection.”
(RTR. C. 216-18.)
Stanley argues, in Issue I of his brief, that “the trial court’s override of the jury’s life verdict in this case failed to comply with Alabama Supreme Court precedents governing judicial override.” (Stanley’s brief, p. 10.) Specifically, Stanley contends that the override is in conflict with Ex parte Taylor, 808 So.2d 1215 (Ala.2001); Ex parte Carroll, 852 So.2d 833 (Ala.2002); and Ex parte Tomlin, 909 So.2d 283 (Ala.2003). The rule from those cases, according to Stanley, is that “trial courts should give deference to jury life votes and override only when there are objective reasons to question the reliability of the jury’s fact-finding (whether that is because the jury did not have access to all relevant information or jurors were unable to follow their oaths).” (Stanley’s brief, p. 12.)
Stanley argues that the trial court failed to comply with Taylor, Carroll, and Tomlin because, he says, “the trial court provided no justification for override other than its mere disagreement with the jury’s weighing of the aggravating and mitigating circumstances, and thus improperly reduced the jury’s role to a nullity.” (Stanley’s reply brief, p. 2.) We disagree.
In Taylor, the Alabama Supreme Court held that, based on the requirements of § 13A-5-47(d) and (e),[1] Ala.Code 1975, *325 “the trial judge must state specific reasons for giving the jury’s recommendation the consideration he gave it.” 808 So.2d at 1219. As indicated in the quoted portion of the amended sentencing order, the trial court stated the “specific reasons for giving the jury’s recommendation the consideration [the trial court] gave it,” Taylor, 808 So.2d at 1219, and the trial court therefore complied with Taylor. Among other things, the trial court noted that the Stanley family had given “gut-wrenching” and “emotional” testimony expressing remorse over Stanley’s childhood and the effects that drug and alcohol usage had had on Stanley. Further, the trial court described as “gut-wrenching” and “emotional” testimony indicating that a death sentence would likely cause a “traumatic” and “quick” deterioration of Stanley’s parents’ health and cause the Stanley family to “essentially break apart.” The trial court, however, disagreed with the jury’s conclusion that this evidence was mitigating.[2] Specifically, the trial court noted “that many people live in far worse family circumstances than what [Stanley] experienced; that many people have suffered from the ravages of drug and alcohol abuse such as [Stanley]; that many people have grown up in socially economically impoverished conditions such as [Stanley]; yet, few, indeed very few, go on to commit a capital murder crime of the nature [Stanley] committed.” Additionally, the trial court stated that it “[found] no credible evidence that any of these factors influenced the commission of the crime [Stanley] committed.”[3]
In Carroll, the Alabama Supreme Court stated:
“We take this opportunity to further explain the effect of a jury’s recommendation of life imprisonment without the possibility of parole. Such a recommendation is to be treated as a mitigating circumstance. The weight to be given that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the identity of the ‘triggerman’ or a recommendation of leniency by the victim’s family; the jury’s recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance.”
Carroll, 852 So.2d at 836 (emphasis added). In Tomlin, the Alabama Supreme Court held that a 12-0 jury recommendation of life imprisonment without the possibility of parole was entitled to “great weight.” 909 So.2d at 286. Here, the trial court complied with Carroll and Tomlin (1) by finding that the jury’s recommendation was “a non-statutory mitigating circumstance, ... and the court does consider it,” and (2) by assigning the jury’s recommendation “significant weight” *326 based on the 8-4 vote in favor of life imprisonment without the possibility of parole.
Ultimately, the trial court found that the three aggravating circumstances far outweighed the one mitigating circumstance (the jury’s advisory verdict). (RTR C. 217.) The trial court did not find compelling the mitigating evidence Stanley presented. In contrast, the trial court found that Stanley’s crime was “extremely gruesome and barbaric” and “was perpetrated with a heartless infliction of brutality and with utter indifference to the suffering of the victim and with a total disregard of human life.” (RTR C. 218.)
Stanley has not demonstrated that the trial court’s decision is in conflict with Taylor, Tomlin, or Carroll. Moreover, Stanley’s case is factually distinguishable from Tomlin and Carroll, in which the Supreme Court reversed the trial court’s override of the jury’s recommendation of life imprisonment without the possibility of parole. In Tomlin, the jury’s recommendation was 12-0 in favor of life imprisonment, and only one aggravating circumstance existed — that “ ‘[Tomlin] committed murder in the first degree wherein two human beings were intentionally killed by the defendant by a series of acts.’ ” 909 So.2d at 285 (quoting the trial court’s order). Further, the trial court justified the override based on an impermissible factor — i.e., that “ ‘[t]he other perpetrator in this crime ... was convicted ... and sentenced to death.’ ” 909 So.2d at 287 (quoting the trial court’s order). In Carroll, the jury’s recommendation was 10-2 in favor of life imprisonment. Like Tomlin, Carroll involved one aggravating circumstance — that the murder had taken place during a robbery — and the trial court justified the override based, in part, on an impermissible factor: Carroll’s incarceration for youthful-offender adjudications. Carroll, 852 So.2d at 835-36.
In the present case, however, the jury’s recommendation was 8-4 in favor of life imprisonment without the possibility of parole. Further, as noted, there were three aggravating circumstances, including the aggravating circumstance “[t]hat the capital offense [Stanley] committed was especially heinous, atrocious, or cruel compared to other capital offenses” (RTR C. 216) — a point the trial court emphasized in its order overriding the jury’s advisory verdict. Finally, there is no indication that the trial court justified its override based on any impermissible factor. Therefore, Carroll and Tomlin are distinguishable from this case.
II.
Stanley argues, in Issue II of his brief, that “the trial court’s override based on the presentation of classic mitigation evidence negated the jury’s consideration of mitigation in violation [of] the' Eighth and Fourteenth Amendments.” (Stanley’s brief, p. 17.) Stanley contends:
“The only justification that the trial court gave for discounting the jury’s verdict is that the jury considered classic mitigating evidence — ‘remorse over [Stanley’s] childhood, the social affects drug and alcohol usage had on [Stanley]; how caring [Stanley] was and had become; improvement in [Stanley’s] behavior since incarcerated and in general, how hard this had been on [Stanley’s] family' — and may have understandably responded to this mitigating evidence with ‘compassion.’ By rejecting the jury’s verdict because it considered mitigating evidence, the judge unconstitutionally negated the jury’s consideration of mitigation.
“If the jury’s verdict can be entitled to less weight because it considered legiti *327 mate mitigating evidence, then the jury’s consideration of this evidence was in effect excluded from the sentencing determination. At a minimum, ‘it was as if the trial judge had instructed a jury to disregard the mitigating evidence [Stanley] proffered on his behalf,’ Eddings {v. Oklahoma], 455 U.S. [104,] at 114 [ (1982) ], which would unquestionably be unconstitutional.”
This argument is without merit. The trial court did not exclude mitigating evidence from the jury’s consideration, nor did any action of the trial court have the effect of excluding such evidence from the jury’s consideration.
As we discuss in more detail in Part IV, the trial court has the authority under Alabama law to disagree with the jury’s sentencing recommendation in a capital case, including the authority (1) to disagree with the jury’s conclusion that certain evidence is mitigating under the particular facts of the case and (2) to disagree with the weight the jury assigns aggravating and mitigating circumstances under the particular facts of the case. Here, the trial court disagreed with the jury’s life-imprisonment-without-the-possibility-of-parole recommendation because the “emotional” and “gut-wrenching” nature of the mitigating evidence (regarding Stanley’s upbringing, his drug and alcohol usage, and how Stanley’s crime and his incarceration had adversely affected the Stanley family) had, in the trial court’s view, caused the jury to attribute more weight to the mitigating evidence than was appropriate, given the particularly egregious nature of the aggravating circumstances. The trial court’s disagreement with the jury for those reasons is not prohibited by Alabama law. See, e.g., Taylor, 808 So.2d at 1219 (affirming override where, in the trial court’s opinion, the defendant’s crimes were “ ‘abominably aggravated and, at best, only faintly mitigated’ in discounting the jury’s conclusion regarding the mitigating evidence, the trial court found that “ ‘[w]hile the jurors in this case were cooperative, harmonious, diligent, and attentive, some jurors’ outbursts of emotion after they found the defendant guilty of capital murder indicated that they were overwhelmed by their impending duty to consider the death penalty as required by law”);[4] Scott v. State, [Ms. CR-08-1747, Oct. 5, 2012] — So.3d-,(Ala.Crim.App.2012) (affirming the trial court’s override of the jury’s recommendation of life imprisonment without the possibility of parole where the override was based, in part, on the “emotional” nature of the mitigating evidence the jury heard).
III.
Stanley argues, in Issue III of his brief, that “the trial court failed to *328 adequately consider and make findings regarding many of the non-statutory mitigating factors presented in violation of state and federal law.” (Stanley’s brief, p. 21.) Stanley asserts that the trial court failed to make “clear” findings regarding the following:
(1) Stanley began using drugs as a child and received inpatient drug treatment for six weeks as a teenager;
(2) Stanley’s drug use likely seriously affected his brain development;
(3) Stanley’s drug addiction included becoming addicted to pain medication after he broke his neck and back in a car accident;
(4) Stanley had been using crack cocaine almost continuously for the six months before he killed Smith;
(5) Stanley had been using crack cocaine for four days without eating or sleeping when he killed Smith;
(6) Stanley had dramatically changed for the better since he stopped using drugs after his arrest, which, Stanley says, shows he had the potential for rehabilitation through drug treatment;
(7) Stanley had close relationships with his family, and his execution would negatively affect his family;
(8) Stanley had been attached to his grandfather and had devoted five years to caring for him before his grandfather’s death;
(9) Stanley had a history, beginning in his childhood, of depression, anxiety, and hypertension;
(10) Stanley had lost consciousness on two occasions, “potentially indicating a concussion or other brain injury”;
(11) “Stanley would be a good peer counselor for other prisoners”; and
(12)Stanley was talented at writing poetry.
(Stanley’s brief, pp. 21-25.)
As Stanley acknowledges, the trial court made findings regarding several of the specific facts listed above. In particular, the trial court made specific findings regarding Stanley’s family history, and, as a part of that family history, the trial court included various facts about Stanley’s life: Stanley grew up in an impoverished home; Stanley’s parents’ relationship with each other was volatile, and his parents were violent to each other; Stanley began drinking at an early age; Stanley essentially raised himself from an early age; Stanley had suffered many effects from drug and alcohol use; and Stanley had been caring before the crime, and his behavior had improved since his incarceration. (RTR C. 215-17.)
In Ex parte Lems, 24 So.3d 540 (Ala.2009), the Alabama Supreme Court stated:
“In Clark v. State, 896 So.2d 584 (Ala.Crim.App.2000), the Court of Criminal Appeals conducted a proper review of a trial court’s failure to find that proffered evidence constituted a mitigating circumstance, stating, in pertinent part:
' “ ‘The sentencing order shows that the trial court considered all of the mitigating evidence offered by Clark. The trial court did not limit or restrict Clark in any way as to the evidence he presented or the arguments he made regarding mitigating circumstances. In its sentencing order, the trial court addressed each statutory mitigating circumstance listed in § ISA-5-51, Ala.Code 1975, and it determined that none of those circumstances existed under the evidence presented. Although the trial court did not list and make findings as to the existence or nonexistence of each nonstatutory mitigating circumstance offered by *329 Clark, as noted above, such a listing is not required, and the trial court’s not making such findings indicates only that the trial court found the offered evidence not to be mitigating, not that the trial court did not consider this evidence. Clearly, the trial court considered Clark’s proffered evidence of mitigation but concluded that the evidence did not rise to the level of a mitigating circumstance. The trial court’s findings in this regard are supported by the record.
“ ‘Because it is clear from a review of the entire record that the trial court understood its duty to consider all the mitigating evidence presented by Clark, that the trial court did in fact consider all such evidence, and that the trial court’s findings are supported by the evidence, we find no error, plain or otherwise, in the trial court’s findings regarding the statutory and nonstatutory mitigating circumstances.’
“896 So.2d at 652-53 (emphasis added).” Ex parte Lewis, 24 So.3d at 545. As Lewis and Clark establish, a trial court is not required to make an itemized list of the evidence it finds does not rise to the level of nonstatutory mitigating circumstances.
In its amended sentencing order, the trial court acknowledged that Stanley presented evidence regarding his family history and his alcohol and drug abuse; specifically, the trial court cited the testimony from a mitigation specialist and from Stanley’s parents and his older sister concerning their remorse about the difficulties of his childhood, the effects of his drug and alcohol use, and of the improvement in Stanley’s behavior since his incarceration. The trial court, however, stated that, although Stanley presented evidence of his family history and his alcohol and drug use and abuse in mitigation, it did not find and consider this to be nonstatutory mitigating evidence. See §§ 13A-5-47(d) and 13A-5-52, Ala.Code 1975.
“ ‘It is not required that the evidence submitted by the accused as a non-statutory mitigating circumstance be weighed as a mitigating circumstance by the sentencer, in this case, the trial court; although consideration of all mitigating circumstances is required, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer. Cochran v. State, 500 So.2d 1161 (Ala.Crim.App.1984), affd in pertinent part, remanded on other part, 500 So.2d 1179 (Ala.1985), affd on return to remand, 500 So.2d 1188 (Ala.Cr.App.), affd 500 So.2d 1064 (Ala.1986), cert, denied, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987).’
“Haney v. State, 603 So.2d 368, 389 (Ala.Crim.App.1991), affd, 603 So.2d 412 (Ala.1992). See also Lewis v. State, 24 So.3d 480, 531, (Ala.Crim.App.2006); Yeomans v. State, 898 So.2d 878, 904 905 (Ala.Crim.App.2004).”
Spencer v. State, 58 So.3d 215, 255 (Ala.Crim.App.2008) (opinion on return to second remand).
Before it reweighed the aggravating and mitigating circumstances in its amended sentencing order on remand, the trial court had determined that the testimony regarding Stanley’s family history did not constitute mitigating evidence. Thus, in determining that no nonstatutory mitigating circumstances existed other than the jury’s recommendation of life imprisonment without the possibility of parole, the trial court clearly considered all the evidence presented by Stanley.[5] Stanley has not demonstrated that he is entitled to *330 relief on this claim. See Lewis, supra; Spencer, supra; Clark, supra.
IV.
In Issue IV of his brief, Stanley argues that “the trial court’s refusal to find and consider undisputed mitigating circumstances conflicts with state and federal law.” (Stanley’s brief, p. 26.) In Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the United States Supreme Court held that in a capital case, the sentencer — the trial court in this case — may not “be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a, basis for a sentence less than death.” 438 U.S. at 604, 98 S.Ct. 2954. See also Eddings v. Oklahoma, 455 U.S. 104, 113-14, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (noting that “the State may not by statute preclude the sentencer from considering any mitigating factor”).
In Thompson v. State, [Ms. CR-05-0073, Feb. 17, 2012] — So.3d—,—(Ala.Crim.App.2012), this Court stated:
“ ‘ “While Lockett v. Ohio, 438 U.S. 586 (1978),] and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority.” ’ Ex parte Slaton, 680 So.2d 909, 924 (Ala.1996) (quoting Bankhead v. State, 585 So.2d 97, 108 (Ala.Crim.App.1989)). ‘The weight to be attached to the ... mitigating evidence is strictly within the discretion of the sentencing authority.’ Smith v. State, 908 So.2d 273, 298 (Ala.Crim.App.2000).
“ ‘ “[T]he sentencing authority in Alabama, the trial judge, has unlimited discretion to consider any perceived mitigating circumstances, and he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require that specific weights be assigned to different aggravating and mitigating circumstances. Murry v. State, 455 So.2d 53 (Ala.Cr.App.1983), rev’d on other grounds, 455 So.2d 72 (Ala.1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Balkcom, 716 F.2d 1511 (11th Cir.1983). The determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation.” ’
“Bush v. State, 695 So.2d 70, 94 (Ala.Crim.App.1995) (quoting Clisby v. State, 456 So.2d 99, 102 (Ala.Crim.App.1983)). See also Douglas v. State, 878 So.2d 1246, 1260 (Fla.2004) (“We conclude that the trial court did not abuse its discretion in giving little weight to the mitigating facts relating to [the defendant’s] abusive childhood.’); Hines v. State, 856 N.E.2d 1275, 1282-83 (Ind.App.2006) (‘The trial court is not obliged to weigh or credit mitigating factors the way a defendant suggests.... [or] to afford any weight to [the defendant’s] childhood history as a mitigating factor in that [the defendant] never established why his past victimization led to his current behavior.’).”
(Emphasis added.)
This Court, in noting that evidence of a difficult family background might — but *331 also might not — be considered a mitigating circumstance, has stated:
“Evidence of a difficult childhood has been characterized as a ‘double-edged’ sword. See Bacon v. Lee, 225 F.3d 470, 481 (4th Cir.2000). ‘[EJmphasizing a client’s deprived childhood does not have a very beneficial impact on a northwest Florida jury, given the fact that many jurors have had difficult lives, but have not turned to criminal conduct.’ Card v. Dugger, 911 F.2d 1494, 1511 (11th Cir. 1990). What one juror finds to be mitigation another juror may find aggravating. ‘[Mjitigation may be in the eye of the beholder.’ Stanley v. Zant, 697 F.2d 955, 969 (11th Cir.1983).”
Davis v. State, 44 So.3d 1118, 1141 (Ala.Crim.App.2009).
Stanley’s argument is that a trial court’s failure to find a mitigating circumstance based on certain mitigating evidence necessarily means that the trial court did not consider that mitigating evidence. Stanley thus conflates the concept of considering mitigating evidence with finding that a mitigating circumstance actually exists in a particular case. This argument has been rejected. See, e.g., Ex parte Hart, 612 So.2d 536, 542 (Ala.1992) (“Lockett does not require that all evidence offered as mitigating evidence be found to be mitigating. Lockett provides that a state may not exclude evidence that the defendant claims is mitigating. This does not mean that all evidence offered by the defendant as mitigating must be found to be mitigating and considered as such in the sentencing process.” (emphasis added)); Ex parte Ferguson, 814 So.2d 970, 976 (Ala.2001); Ex parte Trawick, 698 So.2d 162, 177 (Ala.1997); Ex parte Slaton, 680 So.2d 909, 924 (Ala.1996); Spencer, 58 So.3d at 257.
Here, although the trial court specifically noted that it considered Stanley’s family history — including all the various evidence discussed in more detail in Part III such as Stanley’s drug and alcohol use and his childhood poverty — the trial court ultimately found that this evidence did not constitute a mitigating circumstance under the particular facts of this case.
Stanley asserts that “there was no factual dispute about the existence of these circumstances.” (Stanley’s reply brief, p. 13.) The trial court’s stated reasons for concluding that this evidence, under the particular circumstances, was not mitigating were (1) Stanley’s sisters faced the same difficult family background but went on to live successful lives, and (2) as the mitigation specialist testified, many individuals come from bad family backgrounds but do not commit capital murder. (RTR C. 215.) Thus, the trial court had evidence before it that called into question whether the evidence Stanley presented was in fact mitigating. See, e.g., Thompson, supra; Davis, supra.
Stanley has not demonstrated that the trial court erred as to this issue.
V.
Stanley argues that the trial court’s statement that there was “no credible evidence that any of these factors influenced the commission of the crime [Stanley] committed” (RTR C. 218) conflicts with Tennard v. Dretke, 542 U.S. 274, 287, 124 S.Ct. 2562,159 L.Ed.2d 384 (2004), and Smith v. Texas, 543 U.S. 37, 45, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004). We disagree.
In Tennard, the United States Supreme Court addressed a “threshold ‘screening test’ ” applied by the United States Court of Appeals for the Fifth Circuit to a claim alleging that a particular capital-sentencing scheme provided an inadequate vehicle to consider mitigating evidence under Penny v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (a “Penry claim”). Under the Fifth Circuit’s test, *332 the court initially determined whether the particular evidence was “constitutionally relevant”; if the evidence was not “constitutionally relevant,” the court would not review a Penry claim. The United States Supreme Court held that the Fifth Circuit’s “screening test” was unconstitutional.[6]
In Stanley’s case, the trial court’s statement that there was “no credible evidence that any of these factors influenced the commission of the crime [Stanley] committed” is not in conflict with Tennard or Smith. The trial court’s amended sentencing order makes clear that it considered all the evidence offered by Stanley, including his family circumstances, his background, and his behavior since being incarcerated. As discussed above, however, the trial court concluded that this evidence, under the particular circumstances, was not mitigating because (1) Stanley’s sisters faced the same difficult family background but went on to live successful lives, and (2) as the mitigation specialist testified, many individuals come from bad family backgrounds but do not commit capital murder. (RTR C. 215.) With that context in mind — i.e., having already determined that those facts were not mitigating in Stanley’s case — the trial court later noted that Stanley had not offered any “credible evidence that any of these factors influenced the commission of the crime [Stanley] committed.” Thus, the trial court’s statement, even assuming Stanley’s reading of Tennard and Smith is correct, does not indicate that the trial court applied a “relevance” test in conflict with Tennard or Smith.
VI.
In accordance with § 13A-5-53, Ala.Code 1975, we address the propriety of Stanley’s death sentence.
*333 Stanley was convicted of murdering Smith during the commission of a robbery in the first degree, an offense defined as capital by § 13A-5-40(a)(2), Ala.Code 1975. The record reflects that Stanley’s sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(l), Ala.Code 1975.
As noted above, the trial court found that the aggravating circumstances outweighed the one mitigating circumstance— the jury’s advisory verdict. In Stanley I, we held that the trial court’s findings as to the statutory aggravating circumstances and statutory mitigating circumstances were proper. After reviewing the amended sentencing order on return to remand and after fully considering the arguments made by the parties in their briefs on return to remand, we hold that the trial court’s findings as to the nonstatutory mitigating circumstances are also proper and are supported by the record. The trial court, which assigned “significant weight” to the jury’s recommendation of life imprisonment without the possibility of parole in its weighing process, acted within its discretion in overriding the jury’s advisory verdict.
Section 13A-5-53(b)(2), Ala.Code 1975, requires this Court to weigh the aggravating circumstances and the mitigating circumstances independently to determine the propriety of Stanley’s sentence of death. Section 13A-5-48, Ala.Code 1975, provides:
“The process described in Sections 13A-5-46(e)(2), 13A-5-46(e)(3) and Section 13A-5-47(e) of weighing the aggravating and mitigating circumstances to determine the sentence shall not be defined to mean a mere tallying of aggravating and mitigating circumstances for the purpose of numerical comparison. Instead, it shall be defined to mean a process by which circumstances relevant to sentence are marshalled and considered in an organized fashion for the purpose of determining whether the proper sentence in view of all the relevant circumstances in an individual case is life imprisonment without parole or death.”
“The determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation.” Ex parte Clisby, 456 So.2d 105, 108-09 (Ala.1984). “[W]hile the existence of an aggravating or mitigating circumstance is a fact susceptible to proof, the relative weight of each is not; the process of weighing, unlike facts, is not susceptible to proof by either party.” Lawhom v. State, 581 So.2d 1159, 1171 (Ala.Crim.App.1990). As noted, the trial court gave the mitigating circumstance little weight in light of the aggravating circumstances present in this case. “The weight to be attached to the aggravating and the mitigating evidence is strictly within the discretion of the sentencing authority.” Smith v. State, 908 So.2d 273, 298 (Ala.Crim.App.2000). We agree with the trial court’s findings. An independent weighing of the aggravating circumstances and the mitigating circumstance indicates that death is the proper sentence.
As required by § 13A-5-53(b)(3), Ala. Code 1975, this Court must determine whether Stanley’s sentence was disproportionate or excessive when compared to penalties imposed in similar cases. The sentence of death in this case is neither excessive nor disproportionate to the penalties imposed in similar cases, considering both the crime and the defendant. See, e.g., Revis v. State, 101 So.3d 247 (Ala.Crim.App.2011), cert, denied (No. 1110584, Aug. 17, 2012), 101 So.3d 247 (Ala.2012); *334 McMillan v. State, 139 So.3d 184 (Ala.Crim.App.2010); Yancey v. State, 65 So.3d 452 (Ala.Crim.App.2009) (opinion on return to remand); Mills v. State, 62 So.3d 553 (Ala.Crim.App.2008); Yeomans v. State, 898 So.2d 878 (Ala.Crim.App.2004); Stallworth v. State, 868 So.2d 1128 (Ala.Crim.App.2001); Reeves v. State, 807 So.2d 18 (Ala.Crim.App.2000); Hardy v. State, 804 So.2d 247 (Ala.Crim.App.1999); West v. State, 793 So.2d 870 (Ala.Crim.App.2000); Gaddy v. State, 698 So.2d 1100 (Ala.Crim.App.1995); Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995); Payne v. State, 683 So.2d 440 (Ala.Crim.App.1995); Peoples v. State, 510 So.2d 554 (Ala.Crim.App.1986) (all murder committed during the course of a robbery).
Finally, this Court previously pretermit-ted a plain-error review of Stanley’s sentencing proceeding, pending the trial court’s return to our remand order. Because the trial court has complied with this Court’s direction on remand as to the sentencing order, we have now reviewed Stanley’s sentencing proceedings pursuant to Rule 45A, Ala. R.App. P. As that rule requires, we have searched the entire proceedings for any plain error or defect that has or probably has adversely affected any of Stanley’s substantial rights. We conclude that there is no plain error in the sentencing that adversely affected Stanley’s rights.
Accordingly, for the foregoing reasons, Stanley’s sentence of death is due to be, and is hereby, affirmed.
AFFIRMED AS TO SENTENCING.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

 Note from the reporter of decisions: On February 3, 2012, the defendant filed a petition for certiorari review. On August 17, 2012, the Alabama Supreme Court issued an order vacating the August 26, 2011, judgment of the Court of Criminal Appeals affirming Stanley's sentence of death and remanding the case with instructions.

. In Part IV, we address Stanley's arguments regarding the trial court’s refusal to find this evidence to be mitigation evidence.

. In Part V, we address Stanley’s contention that the trial court’s statement in this regard is in conflict with Tennard v. Dretke, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004), and Smith v. Texas, 543 U.S. 37, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004).

. Stanley points out that the trial court here found in its original sentencing order that "the elements of passion, prejudice or other arbitrary factors were not present in the jury's verdict which affixed punishment at life imprisonment without parole.” (C. 273.) Stanley argues that Taylor is therefore distinguishable. We disagree. Although the trial court in Taylor stated that some of the jurors had "outbursts of emotion” after the verdict of guilty was entered, the trial court did not expressly find that the jury's sentencing recommendation in that case was the result of "passion, prejudice, or other arbitrary factors.” In Stanley's case, it was not inconsistent for the trial court to find that the jury’s recommendation was not the result of "passion, prejudice, or other arbitrary factors” even though the jury's recommendation was likely influenced by "emotional” and "gut-wrenching” testimony. Indeed, the trial court's amended sentencing order recognizes that compassion was a reasonable (i.e., not an arbitrary) response to the mitigating evidence the jury heard; as our opinion discusses, however, it also was reasonable for the trial court to disagree with the jury’s weighing of evidence of aggravating and mitigating circumstances.

. Because the trial court considered the evidence Stanley offered, the cases Stanley cites *330 regarding a court's failure to consider mitigating evidence are inapposite. See Stanley's brief, p. 25.

. Specifically, the United States Supreme Court stated:
"Despite paying lipservice to the principles guiding issuance of a [certificate of appealability] ..., the Fifth Circuit’s analysis proceeded along a distinctly different track. Rather than examining the District Court's analysis of the Texas court decision, it invoked its own restrictive gloss on [Penry v. Lynaugh, 492 U.S. 302 (1989) ('Penry I’)]:
" 'In reviewing a Penry claim, we must determine whether the mitigating evidence introduced at trial was constitutionally relevant and beyond the effective reach of the jury- To be constitution-
ally relevant, "the evidence must show (1) a uniquely severe permanent handicap with which the defendant was burdened through no fault of his own, ... and (2) that the criminal act was attributable to this severe permanent condition.” ’ [Tennard v. Cockrell, 284 F.3d 591, 595 (5th Cir.2002)] (quoting Davis v. Scott, 51 F.3d 457, 460-461 (C.A.5 1995)).
"This test for ‘constitutional relevance,’ characterized by the State at oral argument as a threshold ‘screening test,’ ... appears to be applied uniformly in the Fifth Circuit to Penry claims.... Only after the court finds that certain mitigating evidence is ‘constitutionally relevant’ will it consider whether that evidence was within ' "the ‘effective reach’ of the jur[y].” ’ _In Ten-nard v. Cockrell, [284 F.3d 591 (5th Cir. 2002),] the Fifth Circuit concluded that Tennard was 'precluded from establishing a Penry claim' because his low IQ evidence bore no nexus to the crime, and so did not move on to the 'effective reach’ question. 284 F.3d at 597.
"The Fifth Circuit's test has no foundation in the decisions of this Court. Neither Penry I nor its progeny screened mitigating evidence for ‘constitutional relevance’ before considering whether the jury instructions comported with the Eighth Amendment.”
542 U.S. at 283-84 (citations omitted). In Smith, the United States Supreme Court rejected a similar "constitutional relevance” test because it "did not provide the jury with an adequate vehicle for expressing a 'reasoned moral response’ to all of the evidence relevant to the defendant’s culpability.” 543 U.S. at 46 (quoting Penry v. Johnson, 532 U.S. 782, 796, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001)).